## Allentown School District Mercantile Tax Case.

Argued January 10, 1952. Before DREW, C. J., STERN, STEARNE, BELL, CHIDSEY and MUSMANNO, JJ.

*Henry L. Snyder,* with him *Samuel D. Frederick, M. Jack Morgan* and *Snyder, Wert & Wilcox,* for appellants.

*George H. Sacks,* for appellees.

OPINION BY MR. JUSTICE BELL, March 24, 1952:

Is the Resolution of the School District of the City of Allentown levying a mercantile tax on wholesale and retail dealers in goods, wares and merchandise under the authority of the Act of June 25, 1947* popularly known as the "Tax Anything Act" valid? Section 1 of this act authorizes political subdivisions, including school districts of the second class, to tax anything not specifically excepted by said act with the following pertinent proviso: "E. No taxes shall be levied by any political subdivision on the following subjects exceeding the rates specified in this subsection: . . . (b) On each dollar of the whole volume of business transacted by wholesale dealers in goods, wares and merchandise, 1 mill; by retail dealers in goods, wares and merchandise and by proprietors of restaurants or other places where food, drink and refreshments are served, 1½ mills; except in cities of the second class, where rates shall not exceed 1 mill on wholesale dealers and 2 mills on retail dealers and proprietors. No such tax shall be levied on the dollar volume of business trans-

---

*P. L. 1145, as amended by the Act of May 9, 1949, P. L. 898, 53 P.S. 2015.1-2015.8.

acted by wholesale and retail dealers derived from the resale of goods, wares and merchandise taken by any dealer as a trade-in or as part payment for other goods, wares and merchandise, except to the extent that the resale price exceeds the trade-in allowance."

The important provisions of the School District's Resolution which was adopted March 29, 1951, are as follows:

"Section 2. Levy and Collection of Tax: For the fiscal year of One Thousand Nine Hundred Fifty-one *and annually thereafter,** the School District hereby imposes *an annual mercantile tax* in the manner and at the rates herein set forth.

"Section 3. Imposition and Rate of Tax: Every person engaged in any of the following businesses in the City of Allentown, shall pay *an annual Mercantile Tax* beginning with the fiscal year, One Thousand Nine Hundred Fifty-one *and every fiscal year thereafter,* according to the following schedule:

"(a) Wholesale vendors or dealers in goods, wares and merchandise, at the rate of One (1) mill on each dollar of the volume of the gross business, transacted by him, or at the rate of $1.00 per $1,000.00 of gross volume of business, or fraction thereof.

"(b) Retail vendors or dealers in goods, wares and merchandise, or persons engaging in conducting restaurants or other places where food, drink or refreshments are sold, at the rate of One and one-half (1½) mills on each dollar of the volume of the annual gross business transacted by him, or at the rate of $1.50 per $1,000.00 of gross volume of business, or fraction thereof. . . .

"Section 4. Computation of Volume of Business:

"(a) Every person subject to the payment of the tax hereby imposed, who has commenced his business

---

* Italics throughout, ours.

at least one (1) full year prior to the beginning of any [fiscal] tax year, shall compute his annual gross volume of business upon the actual gross amount of business transacted by him during the preceding *calendar* year.

"(b) Every person subject to the payment of the tax hereby imposed, who has commenced or who commences his business less than one (1) full year prior to the [fiscal] tax year One Thousand Nine Hundred Fifty-one shall compute his annual gross volume of business for such tax year, upon the gross volume of business transacted by him *during the first month* he engages in business, *multiplied by twelve.*

"(c) Every person subject to the payment of the tax hereby imposed, who commences his business subsequent to the beginning of the [fiscal] tax year One Thousand Nine Hundred Fifty-one or any succeeding tax year, shall compute his annual gross volume of business for such tax year upon the gross volume of business transacted by him *during the first month* of his engaging in business, *multiplied by the number of months* he engaged in business in such tax year.

"(d) Every person subject to the payment of the tax hereby imposed, who engages in a business, temporary, seasonal or itinerant by its nature, shall compute his annual gross volume of business *upon the actual* gross amount of business transacted by him, during such tax year."

Section 3 of the Act provides: "It shall be the duty of the court to declare the ordinance and the tax imposed thereby to be valid unless it concludes that the ordinance is unlawful or finds that the tax imposed is excessive or unreasonable; but the court shall not interfere with the reasonable discretion of the legislative body in selecting the subjects or fixing the rates of the tax. The court may declare invalid all or any portion

of the ordinance or of the tax imposed or may reduce the rates of tax."

Section 11 of the resolution of the School District contains a severability or saving clause.

More than 25 persons affected by the tax appealed to the court of Quarter Sessions of Lehigh County alleging nine reasons why the tax was invalid or unconstitutional; and from the Order of the Court below sustaining (with one modification) the constitutionality of the Act, the taxpayers have taken this appeal.

Before discussing the taxing resolution in detail it seems wise to state certain general principles in the light of which the questions and problems here involved must be approached and determined.

When the constitutionality of an Act of Assembly is questioned, a Court can declare the act void only when it clearly and plainly violates the constitution: *Evans v. West Norriton Township,* 370 Pa. 150, 87 A. 2d 474; *Tranter v. Allegheny County Authority,* 316 Pa. 65, 173 A. 289.

While the presumption of constitutionality of an ordinance is not as strong as that of an Act passed by the legislature, "Where *a reasonable interpretation* can be adopted, which will save the constitutionality of an act or ordinance, it is the court's duty to adopt it: *Commonwealth v. Girard Trust Co.,* 327 Pa. 135, [193 A. 2d 642];" *Dole v. Philadelphia,* 337 Pa. 375, 386, 11 A. 2d 163.

The Resolution levies a tax on wholesalers and retailers at a rate authorized by the Act, so that in this respect the Resolution is in conformity with the enabling act. However, the Resolution as drawn is very confusing and we are forced to conclude that it was enacted without careful consideration. In Sections 2 and 3 the School District levies for the fiscal year 1951 (which by law commences July 1, 1951) *and an-*

*nually thereafter* an annual mercantile tax, "according to the following schedule: . . ." The Act of March 10, 1949,* known as the Public School Code, requires that all school taxes be assessed during the month of April or May of each year for the ensuing fiscal year; and under this act it is evident that any tax imposed by a school district (whether stated to be an annual tax or not) cannot be a recurring tax nor a tax for longer than the ensuing fiscal year, since it must be reviewed annually by the School Directors and may be assessed only if warranted by their budget requirements for the ensuing fiscal year. Because this appeal involves only the year 1951, the imposition of an annual tax "for every fiscal year thereafter" would not, standing alone, be sufficient to render invalid a taxing resolution which in all other respects was valid.

The Resolution taxes wholesalers and retailers at different rates which is authorized by the Act. The Resolution also divides wholesalers and retailers into four different classes: (a) persons who have commenced business at least one full year prior to the fiscal year commencing July 1, 1951; (b) persons who have commenced business less than one full year prior to the fiscal year commencing July 1, 1951; (c) persons who commence business subsequent to July 1, 1951, or any succeeding tax year, and (d) persons who are engaged in a temporary, seasonal or itinerant business.

Article IX, section 1, of the Constitution of Pennsylvania, provides, "All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws; . . ." This means that the classification by the legislative body must be reasonable and the tax must be applied with uniformity

---

* P. L. 30, Article 6, Section 672, as amended, 24 P.S. 6-672.

upon similar kinds of business or property and with substantial equality of the tax burden to all members of the same class: *Commonwealth v. Girard Life Insurance Co.*, 305 Pa. 558, 158 A. 262; *Knisely v. Cotterel*, 196 Pa. 614, 46 A. 861; *Dufour v. Maize*, 358 Pa. 309, 56 A. 2d 675; *Commonwealth v. McCarthy*, 332 Pa. 465, 3 A. 2d 267; *Dole v. Philadelphia*, 337 Pa. 375, 11 A. 2d 163.

In the light of these authorities we cannot say that the classification of wholesalers and retailers with its sub-classification of those who commenced business one year prior to the tax year, and less than one year prior to the tax year, and subsequent to the commencement of the tax year, and those who engage in temporary, seasonal or itinerant business, is an arbitrary or unreasonable classification.

That brings us to the consideration of the differing formulae and the different methods of tax computation prescribed by the Resolution.

Subsection (a) of Section 4, provides that every person (wholesaler or retailer) who commenced his business at least one full year prior to July 1, 1951, shall compute his annual gross volume of business (and hence his tax) upon the actual gross amount of business transacted by him, not during the preceding fiscal year but, *during the preceding calendar year.* The effect or net result of this provision is that if a person commenced his business on June 1, 1950, his annual gross volume of business and therefore his tax would be computed upon his gross business in the last seven months of 1950; and a similar result would apply to persons who commenced their business in any one of the preceding months of 1950.

Subsection (b) applies to those persons who commenced business less than one full year prior to the fiscal year commencing July 1, 1951. If, for example, a person commenced his business on January 1 or June

1, 1951, the Resolution directs him to compute his annual gross volume of business for the fiscal year 1951 upon the gross volume of business transacted by him in the first month, irrespective of whether he was in business one month or six months, *multiplied by 12.*

Subsection (c) taxes a dealer who commences his business subsequent to July 1, 1951 (or subsequent to any succeeding tax year), upon the annual gross volume of business transacted by him *during the first month* of his engaging in business *multiplied by the number of months* he engaged in business in such tax year.

Subsection (d) taxes a dealer who engages in a temporary, seasonal or itinerant business upon the *actual* gross amount of business transacted by him during such tax year.

To summarize: Subsection (a), supra, bases the tax computation on actual gross income in the preceding *calendar* year, and when applied to a dealer who commenced business June 1, 1950, limits and bases his tax computation upon a seven-months period although the dealer had been in business thirteen months; subsections (b) and (c) supra, base and impose a tax not on the dealer's actual volume of business but upon an estimated or theoretical or imaginary volume of business, viz., upon the gross volume of business transacted in the first month multiplied in class (b) by 12; and in class (c) by the number of months the dealer engaged in business in such tax year; while subsection (d) taxes a seasonal dealer upon the actual business transacted by him in the tax year.

The yard-stick or method of computation established in subsections (a), (b) and (c) not only differ from each other but are also fundamentally different from that prescribed in subsection (d). These different tax computation formulae are arbitrary and have

no reasonable or practical justification; they create a substantial and unjustifiable inequality of tax burden; and they establish an estimated or theoretical basis for tax which is different from *actual* gross income which is the standard prescribed by the plain language of Section 1E of the Act.

Uniformity requires substantial equality of tax burden: *Com. v. Overholt & Co., Inc.*, 331 Pa. 182, 200 A. 849; *Com. v. Repplier Coal Co.*, 348 Pa. 372, 35 A. 2d 319; *Moore v. Pittsburgh School District*, 338 Pa. 466, 13 A. 2d 29. While taxation is not a matter of exact science and perfect uniformity and absolute equality in taxation can rarely ever be attained (*Wilson v. Philadelphia*, 330 Pa. 350, 352, 198 A. 893), the imposition of taxes which are to a substantial degree unequal in their operation or effect upon similar kinds of business or property, or upon persons in the same classification, is prohibited: Cf. *Com. v. Overholt & Co., Inc.*, 331 Pa. 182, 190-191, 200 A. 849; *Pollock v. Farmers' Loan and Trust Co.*, 157 U. S. 429, 599. Moreover while reasonable and practical classifications are justifiable, where a formula or method of computing a tax will, in its operation or effect, produce arbitrary or unjust or unreasonably discriminatory results, the constitutional provision relating to uniformity is violated: *Turco Paint & Varnish Co. v. Kalodner*, 320 Pa. 421, 184 A. 37; *Hans Rees' Sons v. North Carolina*, 283 U. S. 123.

We may aptly repeat what was said by (former Chief) Justice Maxey in *Com. v. Overholt & Co., Inc.*, 331 Pa., supra, page 191: "A tax to be uniform must operate alike on the classes of things or property subject to it. The tax herein challenged presents an outstanding example of a legislatively imposed inequality of burden, and to protect the citizen against it is a judicial duty."

Even more important, the enabling act *prohibits* a school district from levying *a tax on the dollar vol-*

*ume of business derived from the resale of goods,* wares and merchandise taken by any dealer as a trade-in, *except to the extent that the resale price exceeds the trade-in allowance.* The Resolution of the School District ignores this prohibition and by its language specifically taxes the wholesalers' or retailers' annual *gross volume of business* without any exceptions or deductions or exclusions.

Neither municipalities nor school districts are sovereigns; they have no original or fundamental power of legislation or of taxation. They have the right and power to enact only those legislative and tax ordinances or resolutions which are authorized by an Act of the legislature; and if such ordinance or resolution is unauthorized or conflicts with the enabling statute or with some of its provisions it is in that respect or to that extent void: *Genkinger v. New Castle,* 368 Pa. 547, 84 A. 2d 303; *Kline v. Harrisburg,* 362 Pa. 438, 68 A. 2d 182; *Murray v. Philadelphia,* 364 Pa. 157, 71 A. 2d 280; *Bussone v. Blatchford,* 164 Pa. Superior Ct. 545, 67 A. 2d 587. Moreover the grant of the right or power to levy taxes must be strictly construed; tax statutes should receive a strict construction and in cases of reasonable doubt, the construction should be against the government: *Murray v. Philadelphia,* 364 Pa. supra.

Neither the severability nor the saving clause of the Resolution can save it. As we said in *Genkinger v. New Castle,* 368 Pa., supra, page 553, quoting from *Murray v. Philadelphia,* 364 Pa., supra, and *Kelley v. Kalodner,* 320 Pa. 180, 191, 181 A. 598: "Even though the operation of the act might possibly be valid in some instances, the good and the bad are so inseparably interwoven that we are obliged to reject the levy in its entirety."

We conclude that the Resolution as drawn is in violation of the enabling Act and of the Constitution of

Pennsylvania; and is unlawful and invalid in its entirety.

The order of the court below is reversed; costs to be paid by appellee.