Commonwealth, Appellant, *v.* Budd Company.

Commonwealth, Appellant, *v.* Westinghouse Electric Corporation.

Argued January 12, 1954.    Before STERN, C. J.,
STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and AR-
NOLD, JJ.

*George W. Keitel,* with him *Howell C. Mette,* Deputy Attorneys General and *Frank F. Truscott,* Attorney General, for appellant.

*Leslie M. Swope,* with him *Henry S. Drinker, James J. Dougherty* and *John R. Scholl,* for The Budd Company, appellee.

*Charles E. Kenworthy,* with him *Roy J. Keefer, Joseph G. Robinson, Hull, Leiby & Metzger* and *Reed, Smith, Shaw & McClay,* for Westinghouse Electric Corporation, appellee.

OPINION BY MR. JUSTICE BELL, June 28, 1954:

These cases involve the same basic question and were argued together and will be treated as one in this opinion.

The question involved may be narrowed to whether §2 of the Corporate Net Income Tax Act of May 14,

1947, P. L. 232, in its application to taxpayers' 1944 corporate net income is constitutional.

Each of the taxpayers is a Pennsylvania corporation; each is engaged in both intra-state and interstate business; and each was subject to Pennsylvania's Corporate Net Income Tax for the years 1944, 1945 and 1946. Each taxpayer duly filed with the Department of Revenue its corporate net income tax report for the year 1944 and each paid the tax shown therein to be due. In 1946 each of the taxpayers suffered a net operating loss which was allowed by the Commissioner of Internal Revenue *and was applicable under the (Federal) Revenue Act of 1942 to the taxpayer's 1944 income.*

The Corporate Net Income Tax Act was first enacted by the Act of May 16, 1935, P. L. 208 for a limited period of two years. It was thereafter reenacted up to and including 1945 (with amendments not here relevant), by every subsequent regular session of the legislature. It was denominated a state excise tax. Section 2 of the Act of May 7, 1943, P. L. 217 (and of the Act of April 11, 1945, P. L. 190) provided: "Section 2. Definitions.—The following words, terms, and phrases, when used in this act, shall have the meaning ascribed to them in this section, except where the context clearly indicates a different meaning. . . .

" 'Net Income.' 1. . . . net income for the calendar year or fiscal year as returned to and *ascertained by the Federal Government,*  . . ."

Section 3 of the said Acts provided as follows: "Every corporation shall be subject to, and shall pay for the privilege of doing business in this Commonwealth, or having capital or property employed or used in this Commonwealth, . . . a State excise tax . . . at the

---

\* Italics throughout, ours.

rate of four per centum per annum upon each dollar of *net income* of such corporation received by, and accruing to, such corporation during the calendar year . . . one thousand nine hundred forty-four."

The Commonwealth ignores the definition of "net income" and limits it to the net income actually received by the corporation during the calendar year. We do not agree with this construction.

The Commonwealth adopted as the base of its tax for determining the tax liability of corporations for the years 1943, 1944 (and by the Act of 1945 supra, the years 1945 and 1946), the amount of *net income* "as returned to and *ascertained* by the Federal Government." Because of the losses which would likely be incurred in converting from wartime to peacetime business, the Revenue Act of 1942 provided that net operating losses could be carried back for the two years immediately preceding the loss year. That meant that each of these taxpayers could, under the Revenue Act of 1942, carry back its net operating loss in 1946 and apply it in reduction of its 1944 income. For the years 1941 to 1945 inclusive, the Department of Revenue and the Department of the Auditor General, in making corporate net income tax settlements and resettlements, allowed deductions for net operating loss carry-backs to the extent that corporations were permitted to do so under the Federal law.

The Commonwealth by Act of *May 14, 1947,* supra, amended the 1943 (and 1945) Acts by providing, inter alia: "Section 2. . . . And provided further, That on reports filed for the calendar year one thousand nine hundred *forty-six, . . .* or any calendar or fiscal year thereafter, no deduction shall be allowed for net operating losses sustained by the corporation during any other fiscal or calendar year, *nor shall any net operating loss sustained by the corporation during* the cal-

endar year one thousand nine hundred *forty-six*, . . . or in any calendar or fiscal year thereafter *be allowed* as a deduction *for any prior* calendar or fiscal *year* . . . ."

"Section 13. This Act shall become effective *immediately* upon its final enactment . . . ."

The Commonwealth contends that this amendment as applied to 1944 corporate net income is valid and constitutional, and that it made no change in the tax base of the prior Acts so far as carry-back losses are concerned.

The first question that arises is, what is the meaning of "net income" as used in the Acts prior to 1947 and more particularly do they permit carry-back losses sustained in 1946 to be deducted in ascertaining 1944 net income?

Pennsylvania chose and adopted *as the base* for determining the tax liability of corporations for the years 1943 to 1946 inclusive, the amount of *net income* as returned to and *ascertained* by the Federal Government, with full knowledge that The Revenue Act of 1942 allowed carry-back losses for the two years immediately preceding the loss year. But Pennsylvania went much further than this. During the month of June, *1946,* in order to attract business to the Commonwealth and to retain within the Commonwealth as much corporate business as possible, Governor Martin and other high officials of the State advertised in the leading newspapers on the Atlantic seaboard as follows: "There are provisions for carry back and carry forward of corporate losses for purposes of State corporate income tax calculations which result in an effective average method of determining taxable income."

Governor Duff, in his Budget Message in January, *1947,* recommended *a change* in the corporate net income tax in order to obtain increased revenue. He

said, inter alia: ". . . One of the principal reasons [for the lower than anticipated receipts from the corporate net income tax] is that this State allows the carry-back, carry-forward of losses as provided in the Federal Corporate Income Tax. *Under this provision losses incurred in the current year may be carried back two years* to be established as credits against taxes paid in these years or may be carried forward two years similarly. . . .

"The carry-back, carry-forward provision was made a part of the Federal Tax Act in order to help to spread the burden of the high Federal taxes. Pennsylvania in using the Federal base did not exclude the operation of this provision as has been done in some other states. Of all the states having a corporate net income tax, this State alone permits the operation of this provision."

Moreover, each of the taxpayers, in reliance on the law, i.e., the Act of 1943 and the Act of 1945, and on the Commonwealth's advertisements and its practice prior to May 14, 1947, of allowing deductions for operating loss carry-backs to the extent permitted under the Federal law, made vital decisions and commitments, and in connection with mergers and a sale of debenture bonds and preferred stock, issued to its stockholders (in connection with possible purchases of stock), and to the buying public and to the (Federal) Securities and Exchange Commission, statements of taxpayer's right to carry-back operating losses for the two years in question.

Taxpayers contend that if this Act of 1947 is interpreted retroactively, as the Commonwealth contends it should be, the refusal to allow the carry-back to 1944 of a net operating loss sustained by the corporation in the year 1946, is unconstitutional for the reason that it violates (a) the Due Process Clause of

the Fourteenth Amendment (Article XIV, §1) of the Constitution of the United States, and of Article I, §§9 and 10 of the Constitution of Pennsylvania, and (b) the Equal Protection Clause of the Fourteenth Amendment of the Constitution of the United States and the Uniformity Clause of Article IX, §1 of the Constitution of Pennsylvania, and (c) the Impairment of Contracts Clause of Article I, §10 of the Constitution of the United States, and of Article I, §17 of the Constitution of Pennsylvania.

It would be regrettable if the law required us to sustain the Commonwealth's present contention that the Act of 1943 never permitted any carry-back losses in the computation of corporate net income and that the 1947 Act should be retroactively applied, because it would constitute an obvious breach of faith by the Commonwealth and be very unfair and unjust to the public and the stockholders who bought stocks or bonds of the taxpayers (on the faith of important statements which taxpayers properly made in reliance on representations of the Commonwealth's highest officials) as well as to the Securities and Exchange Commission and to each of the taxpayers here involved. We recently decided in *Commonwealth v. Western Maryland Rwy. Co.*, 377 Pa. 312, 320-321, 105 A. 2d 336, upon somewhat similar facts, that the Commonwealth could not be estopped by the public statements or official acts of some of the Commonwealth's highest officials. We need not decide whether that principle would apply to the facts in the instant case, because the 1947 Act if retroactively applied to 1944 net income, clearly violates both the Federal Constitution and the State Constitution.

The Act of 1943, as reenacted in 1945, being a tax act and not an act providing, as the Commonwealth contends, for exemptions or deductions, must be strict-

ly construed against the Commonwealth and all reasonable doubts must be resolved in favor of the taxpayer: *Allentown School District Mercantile Tax Case,* 370 Pa. 161, 171, 87 A. 2d 480; *Murray v. Philadelphia,* 364 Pa. 157, 71 A. 2d 280; *Commonwealth v. Repplier Coal Co.,* 348 Pa. 372, 35 A. 2d 319.

This Court has already decided that the prior Acts, i.e., prior to 1947, adopt as a tax base the "Net income as ascertained [by the Federal Government] . . . . How it was fixed by the Federal authorities is of no concern to the taxing officers of the Commonwealth nor to its statute." *Commonwealth v. Warner Bros. Theatres, Inc.,* 345 Pa. 270, 27 A. 2d 62; *Commonwealth v. Electrolux Corp.,* 362 Pa. 333, 339, 67 A. 2d 105. We reaffirm the Court's prior construction of the words "net income" as ascertained by the Federal Government; and we now hold that this necessarily means gross income less all the deductions and carry-back losses ascertained and allowed taxpayer by the Federal Government under The Revenue Act of 1942.

We agree with the taxpayers' contention that the Act of 1947, by its terms and in its operation and effect, arbitrarily and unreasonably discriminates against them and therefore violates the Uniformity Clause of the Pennsylvania Constitution and the Fourteenth Amendment of the Federal Constitution which —so far as reasonableness of classification is concerned, or as applied to questions of taxation—stand in pari materia: *Allentown School District Mercantile Tax Case,* 370 Pa., supra; *Commonwealth v. Fireman's Fund Insurance Co.,* 369 Pa. 560, 565, 87 A. 2d 255; *Commonwealth v. Girard Life Insurance Co.,* 305 Pa. 558, 562, 158 A. 262.

In *Allentown School District Mercantile Tax Case,* 370 Pa., supra, we said (pages 167, 170): "Article IX, section 1, of the Constitution of Pennsylvania, pro-

168

vides, 'All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws; . . .' This means that the classification by the legislative body must be reasonable and the tax must be applied with uniformity upon similar kinds of business or property and with substantial equality of the tax burden to all members of the same class: Commonwealth v. Girard Life Insurance Co., 305 Pa. 558, 158 A. 262; Knisely v. Cotterel, 196 Pa. 614, 46 A. 861; Dufour v. Maize, 358 Pa. 309, 56 A. 2d 675; Commonwealth v. McCarthy, 332 Pa. 465, 3 A. 2d 267; Dole v. Philadelphia, 337 Pa. 375, 11 A. 2d 163.

. . .

". . . While taxation is not a matter of exact science and perfect uniformity and absolute equality in taxation can rarely ever be attained (Wilson v. Philadelphia, 330 Pa. 350, 352, 198 A. 893), the imposition of taxes which are to a substantial degree unequal in their operation or effect upon similar kinds of business or property, or *upon persons in the same classification, is prohibited*: Cf. Com. v. Overholt & Co., Inc., 331 Pa. 182, 190-191, 200 A. 849; Pollock v. Farmers' Loan and Trust Co., 157 U. S. 429, 599. Moreover while reasonable and practical classifications are justifiable, where a formula or method of computing a tax will, in its operation or effect, produce arbitrary or unjust or unreasonably discriminatory results, the constitutional provision relating to uniformity is violated: Turco Paint & Varnish Co. v. Kalodner, 320 Pa. 421, 184 A. 37; Hans Rees' Sons v. North Carolina, 283 U. S. 123."

The *1947* Act amended, as we have seen, the definition of net income in §2 of the prior Acts, and in its relevant provisions provides: ". . . nor shall net operating loss sustained by the corporation during the

calendar year one thousand nine hundred forty-six . . . be allowed as a deduction for any prior calendar . . . year." Section 7 of the *1943* Act and of the 1945 Act provided as follows: "Section 7. Changes Made by Federal Government.—(a) If the amount of the net income, as returned by any corporation to the Federal Government, is finally changed or corrected by the Commissioner of Internal Revenue or by any other agency or court of the United States, such corporation, within thirty (30) days after the receipt of such final change or correction, shall make a corrected report, under oath or affirmation, to the department showing such finally changed or corrected net income, upon which the tax is required to be paid to the United States."

This Section was amended in 1947 by adding subsection: "(d) The provisions of this section shall not be construed so as to permit a resettlement based upon the allowance of any deduction on account of net operating losses, sustained in other fiscal or calendar years, that are not allowed as deductions under the definition of 'Net Income', as contained in section two of this act." The Act of 1947 then provided that it should become effective *immediately* upon its final enactment, viz., May 14, 1947.

The effect of the amendments in the Act of 1947 are these: No resettlement which was based upon the allowance of any deduction for operating losses sustained in 1944 or 1945 or 1946 could be made *after May 14, 1947*.

The Act of 1947 means, and it was so interpreted by the fiscal and administrative officers of the Commonwealth, as the Chancellor found, based upon adequate evidence, that in case corporations sustained net operating losses in 1946 and because of going out of business or because of a merger or consolidation or a

withdrawal from the State or for any other reason, obtained from the Commonwealth a resettlement of its taxes prior to May 14, 1947, that resettlement, with its deduction for a carry-back loss sustained in 1946, was valid; but other corporations of the same class, with net operating losses sustained in 1946, were not entitled to a deduction therefor if no resettlement had been made prior to May 14, 1947. In other words, corporations of the same class, each having net operating losses in 1946, are treated radically differently, *depending solely upon the date of resettlement.* The liability or non-liability for (a higher) tax was made to depend, not upon the amount of net income as ascertained by the Federal Government, not upon a corporation's net operating loss in 1946, not upon a justifiable classification of corporations, but solely upon whether a resettlement of carry-back losses for 1946 and prior years was made by the fiscal or administrative officers of the Commonwealth prior or subsequent to May 14, 1947. Such a classification, such a tax, is arbitrary and unreasonably discriminatory; the tax is not applied with substantial equality of the tax burden to all members of the same class. The effect of the Act is to produce arbitrary, unjust and unreasonably discriminatory results and, for these reasons, it violates, so far as these taxpayers are concerned, Article IX, §1 of the Pennsylvania Constitution and §1 of the Fourteenth Amendment of the Constitution of the United States.

The Commonwealth further contends that even if the Act of 1943 permitted a deduction from 1944 net income of carry-back losses suffered in 1946, the legislature can change and prohibit this in 1947. We find no merit in this contention.

An Act of Congress or an Act of the legislature of Pennsylvania which imposes a retroactive tax is not

unconstitutional per se merely because it is retroactive in its language or in its operation: *Billings v. United States,* 232 U. S. 261, 282; *Milliken v. United States,* 283 U. S. 15, 21; *Welch v. Henry,* 305 U. S. 134; *Shirks Motor Express Corp. v. Messner,* 375 Pa. 450, 462, 100 A. 2d 913.

While a principle more favorable to the taxpayer has been applied in gift tax cases (See *Untermyer v. Anderson,* 276 U. S. 440, and *Nichols v. Coolidge,* 274 U. S. 531), laws or acts imposing income taxes or excise taxes or property taxes have been sustained even though applied retroactively during the year of the session in which the taxing statute is enacted, and in some instances during the year of the preceding session. These statutes were sustained even though they increased the tax burden by imposing new taxes or increasing the rates of old ones, or both; and the retroactive effect was held not to constitute a denial of due process under either the United States or the Pennsylvania Constitutions: *Shirks Motor Express Corp. v. Messner,* 375 Pa., supra; *Welch v. Henry,* 305 U. S., supra; *Stockdale v. The Insurance Companies,* 20 Wall. 323. It is obvious, however, that there must be some limitation on the right of a legislative body to pass laws imposing taxes retroactively, for otherwise a legislature could constitutionally impose new or increased taxes retroactively for a period of 25 or 50 years which would be so onerous or confiscatory and unjust as to bankrupt the individuals or corporations thus taxed. This was recognized in *Welch v. Henry,* 305 U. S., supra, where the Court sustained an Act of Wisconsin passed in *1935* which for the first time taxed corporate dividends received by taxpayer in the year *1933,* a return of which was not due, however, under Wisconsin law, until March 15, *1934.* Justice STONE said (pages 149, 150) : ". . . The contention that

the retroactive application of the Revenue Acts is a denial of the due process guaranteed by the Fifth Amendment has been uniformly rejected. Stockdale v. Insurance Companies, 20 Wall. 323, 331; Railroad Co. v. Rose, 95 U. S. 78, 80; Flint v. Stone Tracy Co., 220 U. S. 107; Billings v. United States, 232 U. S. 261, 282; Brushaber v. Union Pacific R. Co., 240 U. S. 1, 20; Lynch v. Hornby, 247 U. S. 339, 343; LaBelle Iron Works v. United States, 256 U. S. 377. . . . And we think that the 'recent transactions' to which this Court has declared a tax law may be retroactively applied, Cooper v. United States, 280 U. S. 409, 411, must be taken to include the receipt of income during the year of the legislative session preceding that of its enactment."

Following *Welch v. Henry,* we decide that a tax may not be retroactively applied beyond the year of the general legislative session *immediately preceding that of its enactment;* to provide otherwise constitutes a denial of due process. For this additional reason the Act of 1947 as applied in this case to 1944 corporate net income denies to each of the appellants Due Process and is void.

The case of *Commonwealth v. Chambersburg Engineering Co.,* 287 Pa. 54, 134 A. 408, is distinguishable because, inter alia, the tax base there was the net income as *returned* to—not ascertained by—the Federal Government. In the instant case neither the Commonwealth nor either of these defendants could know the net income which was its taxable base for the year 1944 until the Federal Government had finally ascertained taxpayer's 1944 net income after deducting net operating losses incurred in 1946. The legislature obviously realized this and even provided in §7 for a report of change in net income and for a resettlement of the tax where changes occurred and did not, as the

Commonwealth contends, limit this to fraud or mistake.

The Commonwealth's further contention that the Acts of 1943 and of 1945 as thus interpreted violate the Uniformity Clause, Article IX, §1 of the Constitution of Pennsylvania is without merit—the rate of tax is the same and the tax base is the same for every corporation of the same class, and therefore there is no lack of uniformity: *Commonwealth v. Warner Bros. Theatres, Inc.*, 345 Pa., supra; *Turco Paint & Varnish Co. v. Kalodner*, 320 Pa. 421, 184 A. 37.

We deem it unnecessary to discuss the other contentions made by appellant or by appellees.

The judgment in each case is affirmed.

Mr. Chief Justice HORACE STERN and Mr. Justice ARNOLD concur in the result.

Mr. Justice CHIDSEY took no part in the consideration or decision of these cases.

————

DISSENTING OPINION BY MR. JUSTICE JONES:

If the majority opinion is in error, as I firmly believe it to be, the unfortunate result is that the claimant taxpayers are unjustly rewarded at the expense of the Commonwealth with large refunds which can only be properly characterized as copious windfalls. If ever there was a case where the court should, of its own motion, order a reargument, this is one. The attendant delay in the final disposition of the appeals would be relatively brief.[1]

————

[1] It was January 14, 1949, when the Budd Company appealed to the court below from the adverse decision of the Board of Finance and Revenue. A like appeal by Westinghouse Electric Corporation was filed on February 8, 1950. Both appeals were tried

In 1942, Congress, in order to relieve corporations from the hardship of anticipated heavy losses in the post-war conversion of industry to peace-time operations, amended the Internal Revenue Code by permitting resettlements of federal income tax liabilities by carrying back losses for two years immediately preceding the year of such losses. At that time .(1942) Pennsylvania had a corporate net income tax which was first levied for a limited period of two years by the Act of May 16, 1935, P. L. 208, but which has since been regularly re-enacted biennially by each succeeding general session of the legislature. The tax so imposed subjected every corporation to the payment of a State excise tax for the privilege of doing business within the Commonwealth at a specified rate per annum upon each dollar of net income of such corporation "as returned to and ascertained by the Federal Government . . . ."

After the Internal Revenue Code had been amended in 1942 so as to include, inter alia, the carry-back loss provision, fiscal officers of the Commonwealth assumed to allow to corporations, subject to the Pennsylvania corporate net income tax, the privilege of carrying back losses from one year to another in order to reduce the net income of a priorly reported and already settled tax year liability and thus lay the

together in the court below, without a jury, on January 23, 1951. Judgment in favor of Westinghouse for a credit of $958,832.88 against the Commonwealth was entered on September 29, 1952, while judgment in favor of Budd for a credit of $284,392.39 against the Commonwealth was entered on October 20, 1952. Exceptions by the Commonwealth to both judgments were argued before the court en banc on January 29, 1953; the exceptions were dismissed and the judgments confirmed by order of the court below on June 29, 1953. From the judgments thus made final, the instant appeals were taken to our May Term, 1954, and were argued in this court on January 12, 1954.

groundwork for a claim for refund. That course appears to have been followed by the fiscal officers of the Commonwealth until the year 1947.

Upon the biennial re-enactment of the corporate net income tax by Act of May 14, 1947, P. L. 232, the legislature provided that in determining the annual net income of a corporation subject to the tax ". . . no deduction shall be allowed for net operating losses sustained by the corporation during any other fiscal or calendar year, nor shall any net operating loss sustained by the corporation during the calendar year one thousand nine hundred forty-six, or during any fiscal year beginning in such calendar year, or in any calendar or fiscal year thereafter be allowed as a deduction for any prior calendar or fiscal year."

Westinghouse, having determined a large net operating loss for the year 1946, filed with the Department of Revenue on April 22, 1947, a formal Report of Change in corporate net income for the year 1944. In the Report, Westinghouse calculated an overpayment of taxes for that year by carrying back a portion of the losses suffered in 1946. Thereby, it sought to reduce *pro tanto* its net operating income for the year 1944 which it had theretofore duly and correctly reported to the Department of Revenue and the corporate net income tax due whereon it had paid *in full* in April and May, 1945. Budd, having sustained a large net operating loss in 1946, also filed with the Department of Revenue a formal Report of Change in its corporate net income for the year 1944 and likewise calculated an overpayment of tax by carrying back a portion of the losses it had suffered in 1946 under the same accounting procedure as was followed by Westinghouse. The Deputy Secretary of Revenue acknowledged receipt of these Reports of Change and filed them without taking action thereon, asserting that the

Act of 1947, supra, prohibited the carrying back of net operating losses for the year 1946 when reporting income to the Commonwealth. The Commonwealth's fiscal officers later refused the resettlement of tax liability for the year 1944 requested by Westinghouse and by Budd on the basis of their Reports of Change. On petitions by both corporations to the Board of Finance and Revenue for a review, the Board refused the petitions and sustained the action of the fiscal officers. It was from the orders of the Board of Finance and Revenue that the taxpayers appealed to the court below which, as already stated, entered judgments for the respective taxpayers.

In so doing, the learned court below held that the amendments contained in the 1947 re-enactment of the Corporate Net Income Tax Act violated the due process and equal protection clauses of the Fourteenth Amendment of the Federal Constitution and the due process clause (Art. I, Sec. 9) and the uniformity clause (Art. IX, Sec. 1) of the State Constitution. With those conclusions, or any of them, I completely disagree. I do agree, however, with the able Deputy Attorney General that the Corporate Net Income Tax Act, as amended and re-enacted by the Act of May 14, 1947, P. L. 232, is valid for either of the two following reasons: (1) the amendatory provisions of the Act were but declaratory of existing law and (2) even if the Act made a substantial change in the prior law, it did so constitutionally.

It is too plain for discussion that, in enacting the Corporate Net Income Tax Act of 1935, the legislature did not intend to allow a carry-back of loss in one calendar or fiscal year to reduce a corporate taxpayer's net income base of a prior year upon which the taxpayer's liability for the privilege of doing business in Pennsylvania in a particular year was founded. It was

not until seven years after the enactment of the Act of 1935 (viz., in 1942) that Congress first enacted the carry-back loss provision for determining a taxpayer's federal income tax liability for a given year. And, three successive biennial general sessions of the legislature (1937, 1939 and 1941) had re-enacted the Corporate Net Income Tax Act of 1935, *ipsissimis verbis*, before the carry-back loss provision ever appeared in the Internal Revenue Code.

What the legislature did by the Act of 1935 and by the subsequent re-enactments of that Act was to impose by Section 3 "a State excise tax . . . at the rate of six per centum per annum upon each dollar of net income of such corporation received by, and accruing to, such corporation" during the taxable year currently under consideration. For the purpose of determining the corporation's net income for the taxable year, Section 2 of the Act defines net income as being the net income "as returned to and ascertained by the Federal Government." And, that is exactly the basis upon which the Commonwealth taxed these corporations for the year 1944. The majority opinion, by construing the phrase "ascertained by the Federal Government" to mean the taxpayer's ultimate *federal* tax liability after adjustments for deductions allowed by further federal legislation, thereby cuts down what was and still truly remains the taxpayer's net income received in the year 1944. In short, the carry-back loss provision of the federal law does not make the taxpayer's net income for the prior year any less but only its federal tax liability.

It was the income received by these corporations in the calendar year 1944 as returned by them and as ascertained (i.e., approved) by the federal government upon which the Commonwealth taxed them. Witness the $57,000,000 plus federal refund that Westinghouse

received in 1947 on the tax it had paid on its 1944 income as returned by it and as ascertained by the federal government which was the net income upon which Pennsylvania also taxed Westinghouse. Had that income not been ascertained by the federal government, Westinghouse would not have paid its federal taxes thereon as it obviously did.

The majority mistakes federal tax liability as ultimately determined for the taxable net income returned by the taxpayer and ascertained by the federal government. Neither Westinghouse's nor Budd's net income for the year 1944, as reported by them to the Department of Revenue, has ever been changed by so much as a penny. True enough, the federal government granted them large refunds on their federal income taxes for 1944 by reason of further deductions federally allowed. But that had nothing whatsoever to do with their liability for the Pennsylvania corporate net income tax on each dollar of net income received by them in 1944. The federal carry-back loss provision did not make them receive less in 1944 than what they had correctly reported.

When the legislature enacted the Corporate Net Income Tax Act of 1935 it is legally presumed to have been cognizant of the decision of this court in *Commonwealth v. Chambersburg Engineering Company,* 287 Pa. 54, 57, 58, 134 A. 408. That case involved the Pennsylvania Emergency Profits Tax Act of 1923, P. L. 876, which is substantially similar to the Act of 1935, supra. It imposed a tax "upon each dollar of the net income of such corporation, during the calendar years" 1923 and 1924. It defined net income as "net income for the calendar or fiscal year as returned to the Federal Government . . ." and required the taxpayer to furnish the Auditor General with a true copy of its

federal tax return. In the *Chambersburg* case the taxpayer had deducted on its State return for 1923 a net loss suffered in 1921 which was a permissible deduction under the federal income tax law then in effect. In sustaining the Auditor General's disallowance of this deduction, we there said,—"Appellant contends that the net income of a corporation upon which the emergency profits tax is to be paid, is the amount of net income upon which income tax is required to be paid to the United States. We do not so construe the act. It defines net income as the net income *returned* to the federal government, not that on which tax is paid to it, and assesses the tax 'upon each dollar of the *net income* of such corporation' during the two years 1923 and 1924. From no language of the act can the inference arise that, so far as the State of Pennsylvania is concerned, losses sustained in prior years are to be deducted from the net income for the two enumerated years. . . . But our act . . . assesses the tax on the actual net income for the named years, not the sum to be taxed as arrived at by the federal authorities after such deductions as may seem proper to them." The majority opinion assumes to distinguish the *Chambersburg* case by saying that the statutory imposition there was upon the net income as *"returned* to the Federal Government." That is a wholly immaterial differentiation. The addition of the words "ascertained by" would not have altered the decision in the *Chambersburg* case; its rationale plainly so confirms.

The basis for the taxpayers' claims here involved emanates solely from the unwarranted action of the State's fiscal officers in disregarding the plain terms of the Pennsylvania Corporate Net Income Tax Act and in according to taxpayers the privilege of resettling their tax liabilities by application of the carryback loss provision of the Internal Revenue Code.

Just when, it may be asked, did that become a part of the Pennsylvania statute? It is the Pennsylvania Act and not the federal income tax law that imposes Pennsylvania's corporate net income tax. In *Commonwealth v. Curtis Publishing Co.*, 363 Pa. 299, 308-309, 69 A. 2d 410, cert. denied, 339 U. S. 928, this court ruled that the interest on United States securities must be eliminated from the federally shown net income base in imposing the Pennsylvania corporate net income tax inasmuch as income from State and municipal securities was not included in such base. In so holding, we said,—"This anomaly arises from the fact that the Pennsylvania Taxing Act takes the corporation's annual return as made to and ascertained by, the Federal Government as the basis of the annual tax it imposes on corporations doing business in Pennsylvania. But this *bookkeeping* fact does not affect the *political* fact that the command to tax the net income emanates from the sovereignty of Pennsylvania and not from the sovereignty of the United States. By adopting this mode of *ascertaining* the tax to be imposed Pennsylvania did *not* delegate to the Federal government any of the State's power to tax. *The act of taxing is the act of the Commonwealth of Pennsylvania.*"

The majority opinion dwells on the unwarranted past action of the State's fiscal officers as well as gratuitous statements of two Governors and a cabinet member to demonstrate that Pennsylvania allowed the use of the federal carry-back provision in determining a taxpayer's liability for the Pennsylvania corporate net income tax. But, as Chief Justice STERN said for this Court in *Federal Deposit Insurance Corporation v. Board of Finance & Revenue*, 368 Pa. 463, 472, 84 A. 2d 495,—"An administrative body cannot, by mere usage, invest itself with authority or powers not

fairly or properly within the legislative grant; it is the law which is to govern rather than departmental opinions in regard to it: [citing authorities]." It seems all too implicit in the majority opinion that, because of the action of the State's fiscal officers and its executives in respect of Pennsylvania's asserted use of the federal carry-back loss provision and the assumption that the instant taxpayers and purchasers of their securities had relied upon these statements and pronouncements, the Commonwealth is estopped from enforcing its Corporate Net Income Tax Act without permitting use of the federal carry-back loss provision. For, while adverting to this court's recent germane decision in *Commonwealth v. Western Maryland Railway Company,* 377 Pa. 312, 320- 321, 105 A. 2d 336, the majority opinion nevertheless says it is unnecessary now to decide whether there can be an estoppel against a sovereign. The *Western Maryland* case leaves not the slightest doubt that *there can be no estoppel against the sovereign* acting in its governmental capacity. As Chief Justice STERN said in the *Western Maryland* case,—"We find no basis whatever for the contention that the Commonwealth has been estopped by reason of the failure of officials who, acting under a mistaken impression of the applicable law, either did not impose the taxes or compromised them for lesser amounts than were properly due. . . . It is a fundamental legal principle that a State or other sovereignty cannot be estopped by any acts or conduct of its officers or agents in the performance of a governmental as distinguished from a proprietary function. No errors or misinformation of officers or agents can estop the government from collecting taxes legally due. However firmly established the rule as to private individuals or corporations that where a person has been induced to act to his detriment by the representations of an agent he

can hold the principal on a theory of estoppel, that rule does not apply when a government is the principal."

There was no time prior to 1947 when the carry-back loss provision of the Federal Internal Revenue Code was a part of the Pennsylvania Corporate Net Income Tax Act either by implied reference or otherwise; nor was the carry-back loss provision to be reckoned with in determining such tax. But, even if it was applicable in ascertaining a taxpayer's liability for the Pennsylvania tax, the Act of May 14, 1947, P. L. 232, very definitely eliminated it.

No authority need be cited for the proposition that a taxing statute is not unconstitutional merely because it operates retroactively. The majority opinion concedes as much and quotes from Justice STONE in *Welch v. Henry*, 305 U. S. 134, 149, 150, to the effect that "The contention that the retroactive application of the Revenue Acts is a denial of the due process guaranteed by the Fifth Amendment has been uniformly rejected. . . . And we think that the 'recent transactions' to which this Court has declared a tax law may be retroactively applied [citing case] must be taken to include the receipt of income during the year of the legislative session preceding that of its enactment." From that, the majority "decide that a tax may not be retroactively applied beyond the year of the general legislative session *immediately preceding that of its enactment;* to provide otherwise constitutes a denial of due process. For this additional reason the Act of 1947, as applied in this case to 1944 corporate net income denies to each of the appellants [sic] Due Process and is void." The error in the foregoing reasoning is at once evident. The year that the Act of 1947 struck at was not 1944 but 1946, the year of the losses which the 1947 Act conclusively and unquestionably put at an end for carry-back purposes. The spread of application

which the federal law gives such losses does not determine the scope of the 1947 Act's retroactivity.

But, beyond that, the amendments of the 1947 Act did not impose any tax. They merely dispensed with any lingering thought of a carry-back of losses in determining a taxpayer's liability under the re-enacted portions of the 1935 Corporate Net Income Tax Act. A taxpayer has no vested right to a deduction or exemption in determining his income subject to tax. Such allowances are a matter of legislative grace and may be taken away at any time without offending either the Federal or State Constitution. Their termination does not constitute a deprivation of property without due process. In *Deputy v. DuPont*, 308 U. S. 488, 493, the Supreme Court said that the ". . . allowance of deductions from gross income does not turn on general equitable considerations. It 'depends upon legislative grace.' " See also *Interstate Transit Lines v. Commissioner of Internal Revenue*, 319 U. S. 590. Consequently, no question of constitutionality arises by reason of the retroactive aspect of the amendments to the 1947 re-enactment.

The contention that the amendments in the re-enactment of 1947 offend against the uniformity clause of the State Constitution and the equal protection clause of the Fourteenth Amendment are patently without merit. Any supposed want of uniformity or equal protection is ascribable alone to the error of the taxing officers in allowing carry-back deductions in resettling the Pennsylvania corporate income tax liability of a few isolated corporations which had dissolved, merged, consolidated or withdrawn during 1946.

Actually, the only want of uniformity under Art. IX, Sec. 1, of the Pennsylvania Constitution results

from this court's authentication of the appellees' claims for refunds.

I would reverse the judgments of the court below and direct the reinstatement of the orders of the Board of Finance and Revenue.