494

Bureau of Employment Security
v.
AAA Moving and Storage Company

*Anne X. Alpern*, Attorney General, and *Morley W. Baker*, Assistant Attorney General, for plaintiff.

*Herbert S. Cohen* and *Raymond Schwartz*, for defendant.

SWOPE, P. J., February 27, 1961.—This is an appeal from an order of the Bureau of Employment Security of the Department of Labor and Industry denying a petition for reassessment in the amount of $498.06, plus interest, covering the period from the first quarter of 1952 through September 30, 1957. The basis for the original assessment and the subsequent denial of the petition for reassessment, of which appellant complains, was that certain amounts paid to individuals during the period in question by appellant, in the operation of its business, should have been included in its contribution reports as "wages" paid for "employment" as those terms are defined by the Unemployment Compensation Law of December 5, 1936, P. L. (1937) 2897, as amended, and hence, subject to tax.

We must look to the appropriate sections of the Unemployment Compensation Law for the definitions of the terms in question, since, if such definitions exist

in the statute, they must be given controlling effect as to the meaning of the terms. See the opinion of Judge Woodside in Quaid v. Phila. Tax Review Board, 188 Pa. Superior Ct. 623, 149 A. 2d 557 (1959), where, in discussing the term "net profits" as defined in the ordinance, the court said, at page 629:

"In construing a statute or an ordinance words and phrases are to be construed according to their common and approved usage, unless the statute or ordinance defines them otherwise. Statutory Construction Act of May 28, 1937, P. L. 1019, §33, 46 PS §533."

See also Penn-Lehigh Corporation Appeal, 191 Pa. Superior Ct. 649, 159 A. 2d 56 (1960).

The definitions of the terms which are material to the issue at hand may be had by reference to the following sections of the statute:

Section 4(l)(1) which defines the term "employment" as:

". . . all personal service performed for remuneration by an individual under any contract of hire, express or implied, written or oral . . .": 43 PS §753.

Also section 4(l)2(B), which provides that:

"Services performed by an individual for wages shall be deemed to be employment subject to this act, unless and until it is shown to the satisfaction of the department that—(a) such individual has been and will continue to be free from control or direction over the performance of such services both under his contract of service and in fact; and (b) as to such services such individual is customarily engaged in an independently established trade, occupation, profession or business": 43 PS §753.

And section 4(x), which defines the term "wages" as:

". . . all remuneration, (including the cash value of mediums of payment other than cash), paid by an

employer to an individual with respect to his employment, except . . .": 43 PS §753.

It must be noted that section 4($l$)2(B) provides that services which might otherwise be deemed "employment" subject to the act may, nevertheless, be relieved from being so considered if two tests can be met: (1) The individual must be shown to be free from control or direction over the performance of such services both under his contract of service and in fact; and (2) it must be shown that the individual, as to the services in question, is customarly engaged in an independently established trade, occupation, profession or business.

Although originally, appellant based its appeal on the theory that the Commonwealth has failed to show that the individuals in question were in "employment" as defined in section 4($l$) of the statute, or that they received "wages" as defined in section 4($x$) therein, at the time of argument its principal contention was that even though the Commonwealth may have established prima facie both the "employment" and the "wages," there is still no coverage under the statute by virtue of the fact that the activities in question fall within the exclusionary language of section 4($l$)2(B). This position now taken by appellant does not represent a departure from the original objections raised in the appeal. It is entirely consistent therewith, and, in fact, it becomes incumbent upon appellant, in establishing the validity of its appeal, to demonstrate precisely how it escapes the statutory definitions in question. One method for accomplishing this purpose and the method which appellant now chooses, is to show that the activities in question fit within the exclusionary language in section 4($l$)2(B) which modifies and actually is a part of the definitions contained in sections 4($l$) and ($x$).

Appellant points out that the so-called "contributions" provided for in the Unemployment Compensation Law are, in reality, taxes upon the right to employ. This is consistent with language contained in the opinion of Judge Neely in Fleishmann's Vienna Model Bakery v. Torquato, 12 D. & C. 2d 490 (1956), and cases cited therein. See also Pittsburgh Petition, 376 Pa. 447, 450 (1954), wherein the Supreme Court stated, at page 450:

"That unemployment compensation contributions are taxes cannot be questioned."

Appellant further contends that a taxing statute must be strictly construed. In Loeb Estate, 400 Pa. 368 (1960), the court said, at page 372:

". . . Acts imposing a tax must be strictly construed against the Commonwealth and all reasonable doubt must be resolved in favor of the taxpayer: Commonwealth v. Budd Company, 379 Pa. 159, 108 A. 2d 563; Allentown School District Mercantile Tax Case, 370 Pa. 161, 87 A. 2d 480; Murray v. Philadelphia, 364 Pa. 157, 71 A. 2d 280; Commonwealth v. Repplier Coal Co., 348 Pa. 372, 35 A. 2d 319."

See also Commonwealth v. Freemann, 55 Dauph. 112 (1944), and article IV, sec. 58, of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §558(3).

In the instant case, however, appellant-taxpayer seeks to avail itself of an exclusionary feature of a taxing statute in order to enjoy an exemption from tax. Positioning itself thus, the taxpayer loses the benefit of the latter proposition and assumes a new burden. For, as early as 1854, the Supreme Court laid down the rule stated thus in Academy of Fine Arts v. Philadelphia County, 22 Pa. 496, 497:

"All laws exempting . . . people or property from . . . the payment of their just proportion of the public taxes, . . . should receive a strict interpretation."

This rule has come down in basically the same form to the present day: See Commonwealth v. Sunbeam Water Co., 284 Pa. 180 (1925) ; Commonwealth v. The Philadelphia Coca-Cola Bottling Co., 15 D. & C. 254 (1930) ; Thaw Estate, 163 Pa. Superior Ct. 484 (1949) ; Fischer v. Pittsburgh, 383 Pa. 138 (1955), and article IV, sec. 58(5), of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §558(5). Having in mind, therefore, that appellant must bring itself within the exclusionary language in the face of a strict interpretation of that language against the allowance of an exemption, we must seek to determine what tests, if any, have been laid down heretofore. In the case of Department of Labor and Industry v. Aluminum Cooking Utensil Company, 368 Pa. 276 (1951), at page 281, the court, in construing the definition of "employment" in the Unemployment Compensation Law and the exclusionary language of 4(*l*)-2(B) of that act, said:

"These exclusions from the class of employees otherwise created by the act are in the conjunctive; therefore they must all co-exist if the employer is to be exempted from the payment of contributions based upon the employment of such individuals."

The first of the two requisites for exclusion as delineated in section 4(*l*) (B) of the act, to the effect that the individual must perform the services in question free from control or direction, both under his contract of service and in fact, has been met amply by appellant, and the Commonwealth concedes that the individuals concerned were shown by the evidence produced by the employer at the reassessment hearing to have been free from control, so that this first test had been met. The evidence adduced at the hearing amply supports the conclusion to which the Commonwealth arrived as to the absence of control. It shows that appellant, in the course of its business of selling, at re-

tail, furniture and household appliances, made sales during the period in question as a result of the activities of certain individuals, referred to as "peddlers" who brought potental customers into appellant's place of business. The original association of these individuals with appellant usually occurred at the initiative of the individual. The "peddlers" were suppled with appellant's price list and nothing else. Sales were made by the "peddlers" by bringing a potential customer into appellant's place of business. If the sale was consummated, the "peddler" became entitled to his commission and, as to him, the matter was closed. Appellant was solely responsible for the financing of the account and servicing the merchandise and assumed the full loss, if any, subsequently occurred through return of the merchandise. Appellant imposed no restrictions on the individual "peddler" as to hours of work, territory to be covered, or techniques or methods of operation. The "peddlers" were paid only for the sales which resulted, received no expense money from appellant and enjoyed no hospitalization insurance, vacations or other fringe benefits which appellant ordinarily grants to its regular employes. The "peddlers" did not carry appellant's business cards, order blanks or advertising materials and did not represent themselves to their customers as being employed by, or affiliated with, appellant. The "peddlers" were not required to bring their customers to appellant and, from time to time, did take their customers elsewhere to appellant's business competitors.

When we come to the second of the two requisites for exclusion as delineated in section 4($l$) (2(B) of the act, to the effect that the individual must be shown, as to the services in question, to be customarily engaged in an independently established trade, occupation, profession or business, the Commonwealth, basing its conclusion on certain criteria set forth by Judge

Sohn, speaking for this court, in the case of Department of Labor and Industry v. Research, Inc., 9 D. & C. 2d 445 (1955), contends that this second or "b" test has not been met by appellants. This conclusion on the part of the Commonwealth results from an erroneous application of the criteria which were correctly set down by Judge Sohn, based upon language contained in the case of Murphy v. Daumit, 387 Ill. 406, 56 N. E. 2d 800 (1944). In the Research, Inc., case, supra, the court was faced with a decision identical with that in the instant case and found that the individuals in question in that case were not free from control so as to meet the statutory test. Therefore, consistent with the Aluminum Co. case, supra, which requires that both the "a" and "b" tests must be met, Judge Sohn correctly pointed out that it became unnecessary to pass upon the question whether the "b" test had been met. He, nevertheless, took the opportunity to discuss th Illinois case with regard to the "b" test, since the Illinois statute is identical with the Pennsylvana statute in this regard, except for the inclusion of the word "customarily" before the word "engaged" in the Pennsylvania statute. We agree that the Illinois decision is a correct interpretation likewise of our Pennsylvania statute. The language of the Illinois case cited by Judge Sohn is as follows:

". . . it is apparent that the act contemplates that one who is engaged in an independent enterprise is an individual who has a proprietary interest in such business to the extent that he can operate same without hindrance from any individual whatsoever and whose business also is free from control. Here, the so-called dealers had no business to sell or give away. They were dependent on the appellant for their employment. . . . Their endeavor existed only by reason of the employment for the appellant and they were subject to his willingness to retain them and were constantly

subject to discharge, at which time they were out of employment."

The Illinois case thus defines "independent" as being possessed of a "proprietary" interest in such business. But note that the decision goes on to indicate that the "proprietary" interest must itself be defined and limited to an interest, the extent of which allows it to be operated "without dependence on another for employment." Thus, the ordinary concept of what constitutes a "proprietary" interest must give way to the limited definition contained in the Illinois court's opinion. If this limited test is met, the interest is "proprietary," so as to meet the requirement of the statute. It is at this point that the Commonwealth errs by insisting that the classic definition of "proprietary" with the ordinary characteristics of an established place of business and/or capital investment must be satisfied. Although, in some instances, the circumstances attendant upon a given activity may coincide with this classic concept and thus help to establish the activity as "proprietary," and although, in other instances, such as in the Research, Inc., case, supra, the absence of certain factors ordinarily expected to be present may be persuasive of the nonexistence of a "proprietary" interest, in the instant case, the absence of these classic features, such as the existence of a separate place of business and/or capital investment is not at all fatal to the contention that the interest is "proprietary" to the extent required, since the activities of such modern day "peddlers" as those with which we are presently concerned are characterized by their itinerant nature, by the absence of any permanently established place of business and by lack of capital investment.

As correctly pointed out by Judge Sohn in the Research, Inc., case, supra, the test of the term "proprietary" as contained in the Illinois case is: May the

subject be fairly considered as "being in business for himself," rather than, as the Commonwealth contends: Does the subject have an established place of business and/or capital investment.

The evidence adduced at the hearing below, not controverted, establishes that the individuals in question took their "customers" to whomever they pleased, including appellant's competitors, did not look to appellant for expenses, came and went as they pleased, worked in whatever territory they chose, and in no way held themselves out as being associated with anyone, insofar as the activities in question were concerned. They took their "customers" to whichever store best suited their purpose; and, in some instances, when one store would refuse a customer, they would take the customer to another store and deal there. This evidence clearly shows that these individuals were completely dependent upon themselves, secured their own customers and dealt wherever they found it most convenient or profitable. The evidence is ample to sustain the test prescribed in the Illinois case, and the Commonwealth's position to the contrary, based upon the classic concept of the term "proprietary" rather than upon the limited definition contained in the Illinois case, must fall.

Having found that the activities in question were "independently" established, we must now determine whether they were "customarily" engaged in. Here again the Commonwealth errs when it contends that this requirement has not been established. Webster's New International Dictionary, 2d Ed., defines "customary" as "agreeing with, or established by, custom." Custom is defined as "A form or course of action characteristically repeated under like circumstances." The evidence in this case establishes that the individuals in question brought their customers to appellant's place of business consistent with the character and nature

of the business in which they were engaging as "ped-
dlers." True, some of the individuals were employed
regularly by others as employes and engaged in the
activities in question on a part time basis only, but
the statutory requirement is not that the activities be
engaged in "primarily," or "exclusively," or "princi-
pally," but only "customarily." The terms are not
synonymous, nor are the first three necessarily in-
cluded in the last.

The test is rather: Whenever the individuals actu-
ally did engage in the activities in question, did they
ordinarily or "customarily" engage in them in such a
way as to be considered "independent," i.e.: Did the
individual hold himself out, and was he capable of per-
forming the particular activities in question for any
who wished to avail themselves of such services; and,
was the nature of the activity not such that the indi-
vidual was compelled to look to only a single employer
for the continuation of such services, on an ordinary
employer-employe relationship. The record below con-
tains ample testimony, not refuted, to the effect that
the "peddlers" in question were considered by all
parties to these transactions as completely independ-
ent "middlemen." They looked upon their "customers"
as their own rather than as belonging to the stores;
they took their customers to whichever store was most
convenient to them, or which offered the most favor-
able transaction, and they consistently refused to ac-
quiesce in the exercise of the slightest control over
their activities by any of the stores with which they
dealt. Therefore, the Commonwealth's argument that
the activities were not "customarily" engaged in, so
as to meet the statutory requirement for exclusion, is
not supported by the evidence, which in fact, supports
the opposite conclusion.

Thus, inasmuch as both exclusionary provisions of
section 4 ($l$) 2 (B) of the act have been met by appel-

lant herein with respect to the individuals in question, we make the following

### Order

And now, to wit, February 27, 1961, the assessment of unemployment compensation made against AAA Moving and Storage Company by the Bureau of Employment Security, Department of Labor and Industry, Commonwealth of Pennsylvania, in the sum of $652.04, contributions and interest, for the period from the first quarter of 1952 through September 30, 1957, is stricken off, and judgment is directed to be entered in favor of appellant.