Commonwealth ex rel. Truscott, Appellant, *v.* DiLauro.

Argued November 27, 1956. Before STERN, C. J., JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Francis D. Pastorius,* for appellants.

*David Berger,* City Solicitor, with him *Jacob J. Siegal,* Assistant City Solicitor, *Abraham Wernick,* Deputy City Solicitor, and *Levy Anderson,* First Deputy City Solicitor, for appellee.

508

Opinion Per Curiam, January 17, 1957:

The judgment is affirmed on the following excerpts from the able opinion of Judge Neely:

"This quo warranto proceeding was instituted by the Attorney General to oust the defendant from the office of City Treasurer of Philadelphia. The complaint filed April 28, 1954, alleges that the defendant illegally holds that office, because at a municipal election held in Philadelphia on November 3, 1953, Francis D. Pastorius, the Republican Party's candidate for the office of City Treasurer, received the highest number of votes and was duly elected for a four year term beginning January 4, 1954.

"The defendant's answer filed June 26, 1954, avers that he is the legal incumbent of the office of City Treasurer by virtue of an appointment *dated December 28, 1953,* made by the Director of Finance and approved by the Mayor of the City of Philadelphia; that these officers were authorized to effect this appointment by an ordinance of the Council of the City of Philadelphia dated *October 16, 1953,* which made the City Treasurer an appointive instead of an elective office. This change by ordinance in the office of City Treasurer from an elective to an appointive office was made shortly before the municipal election, and the appointment of the defendant was just prior to the beginning of the new term for which the plaintiff claims he was elected. . . . The validity of the City Ordinance is in dispute.

"Because of the prospective change in the State Administration which bring into office a new Attorney General, Francis D. Pastorius sought to intervene as party plaintiff in order that he might prosecute this action in his own behalf. The petition for intervention was filed on December 9, 1954, and intervention was allowed on December 21, 1954. The facts in this case

are not substantially in dispute. We will hereinafter set forth those facts which we deem material to our decision. There are, however, serious legal questions that are in controversy between the parties. The parties waived a jury trial.

"This case was listed for trial by the intervening plaintiff at our Commonwealth Court held on October 11, 1955. At this trial the present Attorney General, who was the successor to the officer who instituted the suit, through his deputy stated in open court that he did not desire to prosecute this action further. He did not, however, withdraw his name of record, it having then been represented to the Court that the Attorney General desired to see justice done. In effect, we understand the position of the present Attorney General to be that he would take no further action in this matter, nor would he further prosecute the case in any respect.

"The intervening plaintiff representing himself then took over, introducing into the record certain facts. He called and examined his own witnesses. . . .

"The facts developed at the trial show that the intervening plaintiff was the candidate for the office of City Treasurer on the Republican ticket, and that at the said municipal election he received 291,628 votes and his opponent 274,722 votes. The said intervening plaintiff had previously been appointed by Governor Fine to fill the term expiring January 4, 1954, and thus was the candidate at the municipal election to succeed himself.

"The intervening plaintiff obtained a memorandum from two members of the Board of Elections in Philadelphia to the effect that at the said municipal election he had received a majority of the votes cast for the office of City Treasurer, but he did not receive an election certificate. In possession of this memorandum,

he presented himself on January 4, 1954, to a Judge of the Orphans' Court of Philadelphia and took an oath of office. The defendant, however, possessed himself of the office and refused to relinquish the office to the plaintiff, and with the aid of other officials in the City prevented the plaintiff from taking over the office of City Treasurer.

. . .

"Article XIV, Section 1, of our State Constitution, designated the Treasurer as a county officer. By the City-County Consolidation Amendment, adopted at the election of November 6, 1951, adding Section 8 to Article XIV of our Constitution, all county offices in Philadelphia, including the office of County Treasurer, were abolished, and it was provided that all county officers should thereupon become officers of the City of Philadelphia. And *until the General Assembly should 'otherwise provide,'* it was stated in the Amendment that these officers should continue to perform their duties and be elected, appointed, compensated and organized in the manner provided by our Constitution and the laws of the Commonwealth in effect at the time of the effective date of the amendment, with the proviso, however, that such officers serving on that effective date should be permitted to complete their terms of office.

"Article XV, Section 1, of the Constitution gave the right and power to cities to adopt their own charters and to exercise the powers of local self-government, subject to restrictions and regulations imposed by the Legislature, it being further provided that laws might be enacted affecting the organization of city government which should become effective when approved by a majority vote of the electors. In pursuance of Article XV, Section 1, the Legislature enacted the First Class

City Home Rule Act of April 21, 1949, P. L. 665, 53 P.S. 3421.1, et seq., which provided that any city of the first class might adopt a charter for its own government, and any such charter, when approved by a majority of the electors voting thereon, should become the organic law of the city at the time specified in the charter.

". . . It was provided in said Act last mentioned that the charter thus adopted might provide for a system of municipal government and the exercise of municipal functions *to the full extent that the General Assembly might legislate in reference thereto.* It was provided also that a city of the first class might enact ordinances and regulations necessary and proper for carrying into execution these powers and all other powers vested in the city by the charter which it adopted. . . .

"It was held in *Lennox v. Clark,* 372 Pa. 355 (1953) that the City-County Consolidation Amendment, Article XIV, Section 8 of the Constitution, which provides that 'In Philadelphia all county offices are hereby abolished, and the city shall henceforth perform all functions of county government within its area through officers selected in such manner as may be provided by law', is self-executing. Under this constitutional amendment, it is provided that the functions of the county officers should thereafter be carried on as officers of the City of Philadelphia 'until the General Assembly shall otherwise provide.'

. . .

"The Legislature, by the Act of August 26, 1953, P. L. 1476, 53 P.S. 3422, et seq., also did 'otherwise provide'. Section 2 (a) of this Act confers upon the Council of the City of Philadelphia 'full powers to legislate with respect to the election, *appointment,* compensa-

tion, organization, *abolition*, merger, consolidation, powers, functions and duties' of the officers enumerated therein, including city treasurer. And in Section 2 (b) it is provided that the Council of the City of Philadelphia 'may abolish or alter the manner of selection of any of the above officers without submitting the determination of that question to the electorate of the City of Philadelphia.'

"The Council of the City of Philadelphia, by ordinance of October 16, 1953, changed the office of City Treasurer, inter alia, from an elective to an appointive office. It is not difficult to surmise the reason for this change, which undoubtedly worked a hardship upon the intervening plaintiff. He had in good faith made a campaign for election and was the choice of the electorate. We are, however, bound by the provisions of the applicable law, regardless of the sympathy we have for the position of the intervening plaintiff.

"The intervening plaintiff contends that Section 2 of the Act of 1953, supra, amounted to an improper delegation of power to the Council of the City of Philadelphia to change the office of City Treasurer from an elective to an appointive office. The intervening plaintiff contends that only by Act of Assembly could that change have been made, pursuant to the Constitutional Amendment, Section 8, Article XIV, supra. It seems to us, however, that to adopt this contention would be to fly directly in the teeth of Article XV, Section 1, of our Constitution, which provides that: '. . . Cities, or cities of any particular class, may be given the right and power to frame and adopt their own charters and to exercise the powers and authority of local self-government, subject, however, to such restrictions, limitations, and regulations, as may be imposed by the Legislature. . . .' By this section of the

Constitution last cited, the Legislature was authorized to confer upon the City of Philadelphia the power to adopt its own charter and to exercise the powers and authority of local self-government. Not only, then, was provision made in the charter to change the City Treasurer to an appointive official, but the Legislature itself gave the Council of the City of Philadelphia the power to change the office from an elective to an appointive office by the Act of 1953.

"The authority of the Legislature to confer upon the City of Philadelphia the power to adopt a charter, and the authority of the Legislature to confer upon the Council of the City of Philadelphia the right to exercise powers of local self-government by making elective offices appointive, both emanate from the same sections of the Constitution, namely, Article XV, Section 1, and from Article XIV, Section 8 as well. By Section 2 of the Act of 1953, supra, the Legislature did no more than carry out their legislative prerogative by specifying the manner in which the powers and authority of local self-government should be exercised with respect to the office of City Treasurer and the other offices enumerated in that Act.

"In *Commonwealth ex rel. Truscott v. Philadelphia*, 380 Pa. 367 (1955), Mr. Justice BELL, who delivered the majority opinion of the Court, said at page 378: '. . . The Act (of 1953) then specifically authorized City Council "to legislate with respect to the election, appointment, compensation, organization, abolition . . . powers, functions and duties of the Coroner, Recorder of Deeds, City Treasurer, Clerk of the Court . . . and the Board of Inspectors of the Philadelphia County Prison. . . ." Under and pursuant to that Act of the General Assembly, City Council has abolished and reorganized all of the aforesaid offices except clerk of

the Court.' Our Chief Justice [HORACE STERN], at page 382, clearly expressed the view that the Legislature had authority by the Act of 1953 to delegate to the Council of the City of Philadelphia the power to abolish the offices specified in that statute. Our learned Chief Justice in his concurring opinion said: 'After the adoption of the Amendment (Article XIV, Section 8) the General Assembly could have provided for the abolition, merging, or regrouping of former county offices within the municipal governmental structure in either one of two ways; it could have itself legislated directly on the subject, or it could have authorized the Council of the City of Philadelphia to do so. It chose to adopt the latter method, and, by the Act of August 26, 1953, P. L. 1476, it vested the Council with "full powers to legislate with respect to the election, appointment, compensation, organization, abolition, merger, consolidation, powers, functions and duties" of several of the former county offices, but it withheld such grant of power in the case of the Sheriff, the City Commissioners, the Board of Revision of Taxes, and the Registration Commission. *The vesting in the Council of the power with respect to the other offices was clearly valid.*' (Parenthesis and emphasis supplied) It is our view, then, that the Legislature was acting within its province in delegating to the Council of the City of Philadelphia the power to abolish the office of City Treasurer and the other offices specified in the Act of 1953. It follows, therefore, that the Ordinance of the Council dated October 16, 1953, was valid, and that the defendant was legally appointed in accordance with the provisions of that ordinance.

. . .

". . . the intervening plaintiff is not entitled to have this Court enter a judgment ousting the defendant from

the Office of City Treasurer of Philadelphia. Wherefore, we enter the following:

ORDER

"AND NOW, April 30, 1956, the prayer of the plaintiff and the intervening plaintiff for relief is denied; the complaint and the proceeding in intervention are dismissed; and judgment is herein entered for the defendant."