# Board of Property, Assessment, Appeals, Review and Registry of Allegheny County
# v. Allegheny County

C.P. of Allegheny County, no. GD00-12360.

*Craig C. Stephens* and *Ira Weiss,* for plaintiffs.
*Terrence F. McVerry,* for defendants.

WETTICK, *J.,* August 9, 2000—In this lawsuit brought pursuant to the Declaratory Judgments Act (42 Pa.C.S. §7531 et seq.), the Board of Property Assessment, Appeals, Review and Registry of Allegheny County and the seven members of the assessment board request this court to declare that county legislation creating a different assessment system violates state law.

My starting point for discussing the legal issues raised in this lawsuit is an April 18, 1997 opinion that I authored in *Miller v. Board of Property Assessment, Appeals and Review of Allegheny County,* 145 P.L.J. 501 (1997).

In that litigation, I addressed the issue of whether the county had unlawfully interfered with and usurped the role of the assessment board by operating the county's assessment system and by limiting the role of the assessment board to hearing appeals. The evidence established that a county director who was not selected by and did not report to the assessment board was managing the county's assessment system. I ruled that the county's management of the assessment system violated

the Second Class County Assessment Law under which the legislature had placed the responsibility for making and supervising assessments in the hands of the assessment board. I stated that the "legislature has determined that an assessment system is likely to have greater integrity, consistency, and stability if the assessment system is operated by an independent board rather than the board of county commissioners or another county official. Consequently, plaintiffs are entitled to pay taxes based on a system operated and supervised by an independent assessment board." *Id.* at 506. (footnote omitted) The court order which I entered decreed that (1) it is the exclusive responsibility and the duty of the assessment board to make, revise, and equalize all assessments; (2) it is the duty of the assessment board to hire an adequate staff to operate an assessment system that makes, revises, and equalizes assessments on an annual basis; and (3) it is the responsibility of the county to provide appropriate funds for the adequate operation of an assessment system.

Through the Act of May 20, 1997, P.L. 149, 16 P.S. §6101-C et seq., the legislature enacted the Second Class County Charter Law which permits the governing body of a second class county to establish a charter drafting committee to prepare a charter consistent with the legislation for submission to the voters of the county. On May 19, 1998, the voters of Allegheny County approved the proposed Home Rule Charter that had been adopted by the charter drafting committee.

The Home Rule Charter contains the following provision concerning the existence of an assessment board:

"There shall be a Board of Property Assessment, Appeals and Review consisting of seven members. The board shall exercise all powers and duties that the county's Board of Property Assessment, Appeals and Review had before the effective date of this charter unless those powers and duties are modified by ordinance or by law. Consistent with the laws of the Commonwealth of Pennsylvania, the county's assessment system shall meet accepted assessment standards and shall ensure access to public records regarding assessments." Allegheny County Home Rule Charter, art. X, §5.

On June 27, 2000, county council enacted bill no. 0071. The chief executive approved this bill on July 6, 2000 and it became County Ordinance no. 15. Ordinance no. 15 adds three chapters to the Administrative Code: chapter 205—Property Assessment Oversight Board; chapter 207—New Board of Property Assessment Appeals and Review; and chapter 209—Office of Property Assessments.

Ordinance no. 15 creates a new assessment system that differs from the assessment system mandated by the Second Class County Assessment Law (Act of June 21, 1939, P.L. 626, 72 P.S. §5452.1 et seq.). The new system replaces the existing assessment board with three entities that will perform the various functions that are now performed under the Second Class County Assessment Law by the assessment board. Chapter 205 creates a Property Assessment Oversight Board that recommends assessment standards and practices to county council, that confirms or rejects the appointment of the chief assessment officer, and that certifies that assessments determined by the Office of Property Assessment have been

made in accordance with the county's Assessment Standards and Practices Ordinance. This board consists of three members: the president of county council or his or her designee; the chief executive or his or her designee; and a person who has at least 10 years practical experience as a real estate broker appointed by the chief executive with the consent of county council.

Chapter 207 creates a new Board of Property Assessment Appeals and Review whose duties are limited to the oversight of assessment appeals, including the hearing of appeals. Four members of the board are appointed by county council and three members are appointed by the chief executive with the consent of county council. Terms are for three years and are staggered.

Chapter 209 creates an Office of Property Assessments that makes and supervises the making of all assessments and valuations of all subjects of real property taxation and makes initial recommendations to the new Board of Property Assessment Appeals and Review of the tax-exempt status of real property. This office is located in the executive branch and the chief assessment officer reports to the manager. The chief assessment officer is appointed by the manager with the consent of the Property Assessment Oversight Board.

The differences between the assessment system provided for by the Second Class County Assessment Law and the assessment system created through ordinance no. 15 are material. Under the Second Class County Assessment Law, an assessment board made up of seven members with six-year staggered terms has responsibility for the oversight function, assessment appeals, and

the hiring (possibly with the approval of the county manager) of the manager of the property assessment office. Under the Second Class County Assessment Law, the office of property assessment is controlled by the assessment board rather than by the executive or legislative branches of county government.

The briefs submitted by both parties suggest that one system (second class county assessment legislation) or the other system (ordinance no. 15) is far preferable. I am told that ordinance no. 15 does not provide protections from abuse by elected officials that an independent assessment board provides. Alternatively, I am told that the county cannot have an efficient, economic, and effective assessment system unless control over this system is exercised by the persons who manage the county. Obviously, this case has nothing to do with whether or not I believe that ordinance no. 15 is preferable to the current system. The issue is who makes the decisions concerning the structure of the assessment system for Allegheny County. This is a legal issue that is unrelated to the wisdom of ordinance no. 15's assessment system.

At the time I decided the *Miller* case, Allegheny County was not a home rule municipality. Consequently, it was required to follow the provisions of the Second Class County Assessment Law. It had no authority to deviate from state law.

Since Allegheny County is now a home rule municipality, in many instances it can enact laws that deviate from state laws governing second class counties. Consequently, my *Miller* opinion is relevant only with respect to my interpretation of the Second Class County Assessment Law. Unless the county is permitted, by vir-

tue of its status as a home rule municipality, to enact laws that deviate from the Second Class County Assessment Law, ordinance no. 15 is invalid because it removes the responsibility for the operation of the assessment system from the assessment board.

The authority of a municipality which has adopted a Home Rule Charter to enact legislation is governed by Article IX, Section 2 of the Pennsylvania Constitution which provides:

"A municipality which has adopted a Home Rule Charter may exercise any powers and perform any function not denied by this constitution, by its Home Rule Charter or by the General Assembly at any time." Pa. Const. Art. IX, Section 2.

Ordinance no. 15 does not involve an exercise of any power or the performance of any function barred by the Constitution of Pennsylvania or barred by the county's Home Rule Charter. Consequently, the issue is whether through the enactment of ordinance no. 15, Allegheny County is exercising powers or performing functions denied by the General Assembly.

I initially consider whether ordinance no. 15 is creating an assessment system that conflicts with any statewide standards for the assessment of property.

The provisions of the Second Class County Assessment Law that place the management of the county's assessment system in the hands of a seven person assessment board whose members have staggered six-year terms is not found in other assessment legislation. In first class counties, appeals are heard by a seven-member board of revision of taxes who are appointed by the common pleas court for six-year terms. Act of June 27, 1939,

P.L. 1199, §2, 72 P.S. §5341.2. However, the council of the City of Philadelphia, with the approval of the electorate, has the power to legislate "with respect to the making of assessments of real and personal property as provided by the Act of Assembly." Act of August 26, 1953, P.L. 1476, §2, as amended by the Act of August 13, 1963, P.L. 795, 53 P.S. §13132(c). The assessment legislation governing second class A and third class counties provides for a board of assessment composed of three members appointed by the county commissioners who serve for terms of four years; this legislation does not require staggered terms. Act of June 26, 1931, P.L. 1379, §1, as amended, 72 P.S. §5342(a). The Fourth to Eighth Class County Assessment Law creates a board of assessment which is composed of the three county commissioners (or if the county commissioners wish, a board consisting of three members whom they appoint to serve for terms which expire concurrently with the terms of the county commissioners making the appointments). Act of May 21, 1943, P.L. 571, art. III, §301, as amended, 72 P.S. §5433.301. The county commissioners, or the persons whom they appoint, are authorized to operate the assessment system and hear appeals.

When there is no uniform statewide approach to a matter, the purpose of the home rule provision of the state constitution (Article 9, Section 2) and the Home Rule Charter and Optional Plans Law (53 Pa.C.S. §2901 et seq.) is to permit a home rule municipality to devise its own approach to the matter. Home rule is the solution to the concern that Allegheny County legislators should not be enacting legislation applicable only to Philadelphia and vice versa. Thus, where the legislature devises

an approach applicable only to second class counties, and in the absence of specific legislation to the contrary, the law governing home rule intends to permit the home rule municipality to substitute the judgment of the home rule municipality's elected officials for the judgment of the state legislators.

The final issue is whether there is any state legislation that specifically preserves those provisions of the second class county assessment law which place in the assessment board the responsibility for operating the assessment system (*i.e.*, the setting of property values) and for establishing procedures for assessment appeals, including the hearing of appeals. Plaintiffs rely on the following charter limitation set forth in the Second Class County Charter Law:

"(h) With respect to the following subjects, the charter shall not give any power or authority to the county contrary to, or in limitation or enlargement of, powers granted by acts of the General Assembly which are applicable to counties of the second class: . . .

"(8) The assessment of real or personal property and persons for taxation purposes." 16 P.S. §6107-C(h)(8).

This provision is ambiguous: (1) it may refer only to state laws describing how real or personal property and persons are to be assessed for taxation purposes (example—state legislation addresses the manner by which an assessed value is to be determined (72 P.S. §5452.4(a)-(a.3))); (2) it may or may not also include state laws governing assessment appeals; and (3) it may or may not also include state laws involving the management and operation of the assessment system.

The Second Class County Assessment Law provides that the members of the assessment board shall be appointed by the county commissioners. 72 P.S. §5452.2 (b). The Second Class County Charter Law abolishes the board of county commissioners; it requires any proposed charter to provide for an elected county executive and an elected legislative council. 16 P.S. §6105-C(a). Consequently, because of this failure to address the manner in which the assessment board would be appointed once the board of county commissioners was abolished, it can be argued that through section 6107-C(h)(8) the legislature only intended to preserve those aspects of state legislation that are not related to the assessment board. This argument would, in fact, have considerable merit if the language of section 6107-C(h)(8) appeared only in the Second Class County Charter Law.

However, section 6107-C(h)(8) is a borrowed provision. The City-County Consolidation Amendment of the Pennsylvania Constitution (adding Section 8 to Article XIV, now found at Pa. Const. Art. IX, Section 13) transferred to the City of Philadelphia all functions previously performed by the government of Philadelphia County. Section 18 of the 1949 First Class City Home Rule Act, Act of April 21, 1949, P.L. 665, §18, 53 P.S. §3421.18 (now 53 P.S. §13133), stated that a first class city shall not exercise powers contrary to or in limitation or enlargement of powers granted by Acts of the General Assembly on the following subjects: "(9) Providing for the assessment of real or personal property and persons for taxation purposes."[1] 53 P.S. §13133(a)(9).

---

1. See *Lennox v. Clark*, 372 Pa. 355, 376, 93 A.2d 834, 844 (1953).

Section 6107-C(h) lists 10 subjects for which the charter shall not give any power or authority to the county contrary to or in limitation or enlargement of the powers granted by the Acts of General Assembly which are applicable to the counties of the second class. The Home Rule Charter and Optional Plan Law (Act of April 13, 1972, no. 62, as amended, 53 Pa.C.S. §2901 et seq.) applicable to all municipalities except cities and counties of the first class (53 Pa.C.S. §2901 et seq.) contains the identical ten subjects including: "(8) The assessment of real property or personal property and persons for taxation purposes."[2] 53 Pa.C.S. §2962.

Consequently, in enacting section 6107-C(h) the legislature was simply using language that it had used in home rule legislation applicable to all municipalities except cities and counties of the first class. Thus, it is unlikely that the legislature was looking at the specific way in which section 6107-C(h) (8) might impact on the Second Class County Assessment Law. Instead, it intended for section 6107-C(h) (8) to have the same impact on assessment legislation governing Allegheny County as the identical provision in legislation governing all counties in the Commonwealth other than Philadelphia had on assessment legislation governing these other counties.

Because section 6107-C(h)(8) is not unique to second class counties, the question is not what aspects of the assessment law unique to second class counties did the legislature intend to preserve. Instead, the question is what aspects of the assessment laws governing all coun-

2. Section 2962(a)(8) was included in the Act of April 13, 1972.

ties (other than counties/cities of the first class) did the legislature intend to preserve through the language that a home rule municipality shall not enact any legislation that alters state legislation on the following subject: "(8) The assessment of real or personal property and persons for taxation purposes."

The parties have cited only a single case that has addressed the meaning of this language. *Lennox v. Clark, supra.* In that case, the court considered the City-County Consolidation Amendment of the Pennsylvania Constitution which provided that county offices of first class counties were now city offices. The city contended that various provisions within the Philadelphia Home Rule Charter (including the civil service provisions of the charter and the charter's prohibitions against political activities by officers and employees of the city) now applied to employees of various offices that had not previously been city offices, including the board of revision of taxes governed by the Act of June 27, 1939, P.L. 1199, 53 P.S. §4805.1 et seq. (now 53 P.S. §5341.1 et seq.).

The board of revision of taxes argued that it was a state agency and therefore not affected by the City-County Consolidation Amendment. The court rejected that argument stating that in 60 of the 67 counties of the state (*i.e.,* counties of the fourth, fifth, sixth, seventh and eighth classes) the assessment of property is in the hands of the county commissioners, and in six counties (counties of the second class and counties of the third class) the assessments are made by a board appointed by the county commissioners. Therefore, in all counties of the state other than Philadelphia the assessment of property has thus been directly recognized by the legislature as

being a purely county function. The court stated that "Performing, therefore, a purely local function upon which the entire fiscal system of Philadelphia is dependent, there is no ground whatever for viewing the board other than as a county office, and, as such, transformed by the City-County Consolidation Amendment into a city office." 372 Pa. at 376, 93 A.2d at 844.

The second argument of the board of revision of taxes relied on section 18 of the Home Rule Act which provided that no city shall exercise powers contrary to or in limitation or enlargement of powers granted by the Acts of the General Assembly which are applicable to the following subject: "(9) Providing for the assessment of real or personal property and persons for taxation purposes." The board argued that the city could not exercise power of any kind over the board because of this provision. The Supreme Court responded as follows:

"It is argued that because of this provision the city can exercise no power of any kind over the board of revision of taxes. Such a contention scarcely merits discussion. What was obviously intended by that provision of the statute was that the city should not have the power to legislate in regard to the substantive rules governing the making of assessments and valuations of property. For example, the city cannot change the provision of section 13 of the Act of 1939 (under which the board now operates) that all taxable property shall be valued and assessed by the assessors and by the board at the actual value thereof, in determining which the price for which it would [sic] bona fide sell shall be considered but shall not be controlling. But the provision of the Home Rule Act in question makes no reference whatever to the *per-*

*sonnel* of the board and effects no limitation of the powers of the city in regard thereto." 372 Pa. at 376-77, 93 A.2d at 844. (emphasis in original)

The *Lennox* opinion is important because it suggests that language identical to 16 P.S. §6107-C(h)(8) and 53 Pa.C.S. §2962(a)(8) may only bar a home rule municipality from enacting legislation concerning the manner in which assessments and valuations of property shall be made (*i.e.,* how property is valued) as opposed to who values the property or hears assessment appeals. The county contends that *Lennox* goes further. According to the county, *Lennox* holds that language identical to 16 P.S. §6107-C(h)(8), 53 Pa.C.S. §2962(a)(8) does not cover state legislation addressing the management of the assessment system or assessment appeals. I disagree. The court in *Lennox* was not considering City of Philadelphia legislation that sought to modify the provisions of the state legislation giving to the board of revision of taxes the authority to establish and operate the assessment system and procedures for the appeal of an assessment, including the hearing of assessment appeals.

Approximately a year and a half after the *Lennox* decision, Philadelphia City Council passed an ordinance which abolished the board of revision of taxes. In *Commonwealth ex rel. Truscott v. City of Philadelphia,* 122 Pa. 292, 111 A.2d 136 (1955), the Pennsylvania Supreme Court ruled that the ordinance violated the City-County Consolidation Amendment of the Pennsylvania Constitution. The amendment which permitted Philadelphia to adopt a charter in which all county officers would become officers of the city contained a provision which stated that until the General Assembly shall otherwise provide, all county officers shall continue to perform their

duties in such a manner as provided for by the laws of the Commonwealth in effect at the time the amendment becomes effective. The court held that this provision barred city council, without a future act of the legislature, from passing an ordinance that abolished or reorganized the board of revision of taxes.[3] (This opinion never considered section 18(9) of the Home Rule Act which might also have been cited if the court believed that it preserved the board of revision of taxes.)

This ruling has no relevance to the present litigation because there are no provisions in the Pennsylvania Constitution or state legislation imposing any restrictions on Allegheny County with respect to the Second Class County Assessment Law other than section 6107-C(h)(8).

As I previously stated, the identical restrictions in the Home Rule Charter and Optional Plans Law governing all municipalities and the Home Rule Law for second class counties barring a home rule municipality from enacting legislation governing the "assessment of real or personal property and persons for taxation purposes" should be construed in the same fashion because there is no basis for believing that the legislature would have intended for these identical provisions to be construed differently, depending upon whether the municipality had been governed by the Second Class County Assessment Law or assessment laws applicable to other counties. If the legislature had intended to treat second class coun-

---

3. Subsequently, on August 13, 1963, the General Assembly enacted legislation which permits the council of the City of Philadelphia, with the approval of the electorate, to enact legislation concerning the board of revision of taxes "with respect to the making of assessments of real and personal property as provided by the Act of Assembly." 53 P.S. §13132(c).

ties in a different fashion from second class A and third class through eighth class counties, it would have enacted special legislation supplementing section 6107-C(h)(8) in the same manner in which it had adopted special legislation for first class counties and cities.

The legislature would have not intended for 16 P.S. §6107-C(h)(8), 53 Pa.C.S. §2962(a)(8) to bar home rule municipalities from altering provisions of the state assessment laws addressing the manner in which the county's assessment system will be managed or addressing the mechanism for assessment appeals, including the body that will hear the appeal, unless the legislature had created statewide approaches that it may have sought to preserve. As I previously discussed at pages 7-8 of this opinion, this is not the case. At the time the legislature enacted 53 Pa.C.S. §2962(a)(8) in 1972 as well as at the time it enacted 16 P.S. §6107-C(h)(8) in 1997, it had already adopted three substantially different approaches to the management of the assessment system and the appeals process. In second class counties, through legislation enacted on June 21, 1939, both functions are the responsibility of a seven-person board that is not directly controlled by the board of county commissioners because of a provision for staggered six-year terms. In fourth through eighth class counties, on the other hand, through legislation enacted on May 21, 1943, county commissioners are given full control over the assessment system, including the hearing of appeals.[4] There is a third

---

4. The legislation governing second class A and third class counties is somewhere in between the second class and fourth to eighth class county assessment laws. There is a three-member board whose members are appointed by the county commissioners to serve for four

approach for counties and cities of the first class. Through legislation enacted on June 27, 1939, appeals are heard by a board over which elected county officials have no control because its members are appointed by the judiciary. However, through legislation enacted on August 13, 1963, with the approval of the electorate, control over the operation of the assessment system may be exercised fully by elected city officials.

Plaintiffs argue that it was important to the legislature to preserve the system created in the Second Class County Assessment Law that places the entire assessment process in the hands of a body that is somewhat independent of the governing body that depends upon the assessments for its revenues. However, if this was important to the legislature, it would not have enacted an assessment law governing more than 50 counties that gives complete control over the assessment system to the county commissioners.[5] Furthermore, if independence is important to the legislature, it would not want 53 Pa.C.S. §2962(a)(8) to be construed to bar home rule counties that would otherwise be governed by the Fourth to Eighth Class Assessment Law from enacting codes that place assessment functions in the hands of a more independent body.

There is no reason why the legislature would have intended for 16 P.S. §6107-C(h)(8), 53 Pa.C.S. §2962(a)

---

years. Vacancies are filled by the commissioners for the unexpired terms. The terms are not staggered—the terms appear to coincide with the terms of the county commissioners.

5. The *Lennox* case stated that in 60 of the 67 counties, assessment of property was in the hands of the county commissioners; presently, 51 counties are governed by the Fourth to Eighth Class County Assessment Law.

(8) to be construed in any manner broader than that suggested by the *Lennox* case: the preservation of state laws governing the manner in which assessors value property. Since management of the assessment systems of the various counties is governed by local laws with very different approaches, the legislature would not have intended to force home rule municipalities to be bound by these local laws. The purpose of home rule is to transfer from the legislature to the municipality the ability to legislate matters that have previously been governed by local laws enacted by the General Assembly.

Finally, the issue in this case is how to construe an act of the General Assembly. Through the adoption of the Home Rule Charter and Optional Plan Law, the General Assembly has advised the courts that in construing its laws, courts should rule in favor of the municipality where there is ambiguity:

"All grants of municipal power to municipalities governed by a Home Rule Charter under the subchapter, whether in the form of specific enumeration or general terms, shall be liberally construed in favor of the municipality." 53 Pa.C.S. §2961.

For these reasons, I enter the following order of court:

## ORDER

On August 9, 2000, it is hereby ordered, adjudged, and decreed that the provisions of the Administrative Code of Allegheny County abolishing the Board of Property Assessment, Appeals, Review and Registry of Allegheny County do not violate the Pennsylvania Constitution, any state laws, or the Allegheny County Home Rule Charter.